UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MAURA ZEYER, | : | Case No. 3:13-cv-01344 (MPS) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BOARD OF EDUCATION, TOWN OF RIDGEFIELD, | : | |
| RIDGEFIELD PUBLIC SCHOOLS, | : | |
| DEBORAH LOW, | : | |
| in her official capacity as Superintendent of Schools, | : | |
| Defendants. | : | March 18, 2015 |

---

**MEMORANDUM OF DECISION**

## I.     Introduction

Plaintiff Maura Zeyer brings this action against the Board of Education of the Town of

Ridgefield ("the BOE"); Ridgefield Public Schools ("RPS"); and Deborah Low, superintendent

of RPS. Her complaint relates to the alleged withholding of wages during her employment as a

bookkeeper for RPS, and it contains seven counts: (1) a claim that Low denied Zeyer procedural

due process; (2) a claim for unpaid wages against the BOE and RPS under Conn. Gen. Stat. § 31-

72; (3) a claim for overtime pay against the BOE and RPS under the Connecticut Minimum

Wage Act ("CMWA"); (4) a claim for overtime pay against BOE and RPS under the Fair Labor

Standards Act ("FLSA"); (5) a claim for breach of contract against the BOE and RPS; (6) an

equitable estoppel claim against the BOE and RPS; and (7) a claim for breach of the implied

covenant of good faith and fair dealing against the BOE and RPS. The defendants have moved to

dismiss the complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).

As elaborated herein, the motion to dismiss is GRANTED IN PART AND DENIED IN

PART. This Court lacks subject matter jurisdiction over Counts Two, Five, Six, and Seven

because Zeyer has failed to exhaust grievance procedures under the applicable collective bargaining agreement ("CBA"). The motion to dismiss is denied as to Counts One, Three, and Four.

## II.      Facts as Alleged

The following facts are taken from Zeyer's second amended complaint. ECF No. 48-1. The allegations will be elaborated further throughout this ruling as the Court discusses each of the counts in the complaint.

Zeyer states that she has been employed by the BOE and RPS since 1998. Compl. ¶ 12. She worked as both a bookkeeper and a house secretary. *Id.* ¶ 10. In September 2002, Zeyer was appointed to a full-time job at Ridgefield High School ("RHS") and a half-time job at East Ridge Middle School ("ERMS") and Scotts Ridge Middle School ("SRMS"). *Id.* ¶ 14. Her appointment letters, which list her salary, initially included only her position at RHS. *Id.* ¶ 11. Her remaining hours were reported by timesheet. *Id.* ¶ 13. Her appointment letters were revised in 2004 to reflect that she was reporting additional hours by timesheet, but still only listed a single salary for her job at RHS. *Id.* ¶ 21. Zeyer agreed with BOE representatives that when she reported her ERMS/SRMS hours by timesheet, she would report only 450 hours of work for the first two years and 550 hours thereafter, even though she actually worked substantially more than that. *Id.* ¶¶ 15-16. From 2002-2007, she was paid at the overtime rate for work at ERMS/SRMS but not for the actual number of hours worked. *Id.* ¶ 22.

In 2005, a change in the CBA began affecting her pension contributions. *Id.* ¶ 23. The contributions and benefits are tied to an employee's base salary, not including overtime pay. *Id.* ¶¶ 68-69. At that point, Zeyer contacted a BOE representative to figure out how the situation would be handled. *Id.* ¶ 23. The defendants proposed an arrangement in which Zeyer's position

would become a 1.45 FTE position, she would be compensated in the form of a straight salary that would include compensation for her work at ERMS and SRMS, her appointment letter would be amended, and her pension contributions would be calculated from her total salary. *Id.* ¶ 25. Zeyer agreed to the arrangement ("the 2007 Agreement"). *Id.* ¶ 27. In approximately June 2010, following the advice of newly retained counsel, the defendants informed Zeyer that the 1.45 FTE position was improper and that she would have to return to filling out timesheets for her work at ERMS and SRMS and under-reporting her hours worked. *Id.* ¶ 37. From 2010 to the date that this action was filed, Zeyer was paid at the overtime rate for her work at ERMS/SRMS, but was not paid for the entire number of hours she worked. *Id.* ¶ 45.

Zeyer attempted to negotiate with the defendants after they made clear that they would no longer honor the 2007 Agreement. *Id.* ¶ 46. In 2011, the defendants informed Zeyer that they were preparing a memorandum of understanding ("MOU") that would attempt to resolve the issue of Zeyer's compensation, though the completed MOU was not provided to Zeyer until approximately June 2012. *Id.* ¶¶ 47, 49. The MOU stated that Zeyer would be placed in a twelve-month bookkeeper position with a salary of $78,958 for services provided at RHS, ERMS, and SRMS. *Id.* ¶ 55. The defendants sought the union's approval of the MOU, but the union voted to reject it. *Id.* ¶ 58.

Zeyer alleges in Count One that Low denied her compensation and pension benefits without due process of law, in Count Two that the BOE and RPS are liable under Conn. Gen. Stat. § 31-72 for unpaid wages, and in Counts Five and Seven that the BOE and RPS breached the 2007 Agreement and the implied covenant of good faith and fair dealing when they changed the terms of her compensation. She alleges in Counts Three and Four that the BOE and RPS failed to pay her for the proper amount of overtime she worked, in violation of the CMWA,

Conn. Gen. Stat. § 31-76c, and the FLSA, 29 U.S.C. § 207. And she alleges in Count Six that the BOE and RPS should be equitably estopped from reneging on the 2007 Agreement.

The defendants move to dismiss Counts One, Five, and Seven on the ground that Zeyer has failed to exhaust the grievance procedures available to her through her union's CBA; Zeyer argues that utilizing those procedures would have been futile. The defendants also argue that Counts One, Two, Three, and Four are barred, at least in part, by the relevant statutes of limitations; Zeyer argues that those limitations periods should be tolled. Finally, the defendants argue that Count One fails on the merits because Zeyer has not stated a cognizable claim that she was deprived of a protected property interest, that Count Five fails because Zeyer has not alleged facts supporting the existence of the contractual terms that she says were breached, and that Count Six fails because Connecticut does not recognize equitable estoppel as a cause of action.

## III.     Legal Standard for Motion to Dismiss

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must contain more than "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations omitted).

Fed. R. Civ. P. 12(b)(1) authorizes dismissal when the federal court lacks subject matter jurisdiction. "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction. But [w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits. In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citations and quotation marks omitted).

## IV.    Discussion

### A.    Count One (Procedural Due Process)

Count One alleges that the defendants failed to provide Zeyer with due process when depriving her of her property interest in continued employment in the 0.45 FTE position, which arises from a provision in Section 6.01 of the CBA that '[n]o employee shall be suspended without pay or discharged without just cause." Exh. A to Def's Mem. Sup. Mot. Dismiss ("CBA") (ECF No. 31-1) at 6.[1] The defendants argue that Zeyer fails to state a claim because she was never deprived of any property interest, that the due process claim should be dismissed because Zeyer has failed to exhaust the grievance procedures provided by the CBA, and that Zeyer's due process claim is barred by the statute of limitations. As set forth below, the Court rejects the defendants' arguments because there are sufficient allegations to support a finding that Zeyer was deprived of a property interest, Zeyer's failure to pursue a formal administrative

---

[1] The complaint references the CBA and several letters of appointment that Zeyer received. These documents have been attached to the parties' briefs, and no issue as to their authenticity has been raised. Although the documents were not attached to the complaint, the Court may consider them on this motion to dismiss, as Zeyer references them throughout the complaint, and they are integral to her claims.

grievance does not preclude the claim, and Zeyer has made allegations sufficient to raise a factual issue as to whether the defendants are estopped from asserting a statute of limitations defense.

"A public employee has a property interest in continued employment if the employee is guaranteed continued employment absent 'just cause' for discharge." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). The defendants claim that changing Zeyer's status from 1.45 FTE to 1.0 FTE was not a deprivation of a property interest because Zeyer's interest was in avoiding "discharge," and the reduction to 1.0 FTE was not a discharge, as she still holds a salaried job at RHS and still receives some additional pay for her work at ERMS and SRMS. The defendants' cite *Mirabilio v. Reg'l Sch. Dist. 16*, No. 3:11-CV-1468 RNC, 2013 WL 5436825, at *2 (D. Conn. Sept. 27, 2013) for the proposition that adverse employment actions short of complete termination do not constitution a deprivation of a property interest. But the Due Process Clause can protect a property interest in a particular position or rank of employment, as long as there is an underlying entitlement to that position or rank, arising from a contract or other source. *Ciambriello*, 292 F.3d at 318. The entitlement at issue in *Mirabilio* was created by a state statute, Conn. Gen. Stat. § 10-151, that had been interpreted to protect teachers only from complete termination. 2013 WL 5436825, at *2. By contrast, the source of the entitlement here is the contractual agreement between Zeyer and the defendants, arising from the terms of the 2007 Agreement and the CBA.

The relevant questions are therefore whether the parties understood the 2007 Agreement to create a separate 0.45 FTE salaried position protected by Section 6.01 of the CBA and whether the term "discharge" in Section 6.01 encompasses a scenario in which an employee takes two salaried positions within the school system, loses one salary, and is instead provided some hourly

compensation beyond the single remaining salary. Zeyer argues in her brief that both of those questions should be answered in the affirmative, and she alleges in the complaint that the 0.45 FTE appointment was a separate salaried position from which she was terminated. Compl. ¶¶ 79-83. The Court is not in a position at this stage to judge what the 2007 Agreement contemplated. And even considering the CBA attached to the parties' filings and incorporated into the complaint, the Court cannot say as a matter of law that the term "discharge"—which is not defined in the CBA—unambiguously fails to encompass the kind of change in employment status at issue. *See Cantonbury Heights Condo. Ass'n, Inc. v. Local Land Dev., LLC*, 873 A.2d 898, 905 (Conn. 2005) ("If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous."). Zeyer has therefore stated a cognizable claim.

And it is a claim that is not subject to an exhaustion requirement. "[T]he plaintiff in a Section 1983 action is not required to exhaust her administrative remedies before bringing suit." *Gupta v. City Of Norwalk*, No. 3:98-CV-2153 AWT, 2007 WL 988692, at *4 (D. Conn. Mar. 31, 2007) (citing *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496 (1982)). Further, although a plaintiff's "failure to submit to the grievance procedures precludes consideration of the fairness of those proceedings in practice," *Narumanchi v. Bd. of Trustees of Connecticut State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988), where "the post-deprivation grievance procedures outlined in the CBA are constitutionally inadequate," a plaintiff's "failure to take advantage of that procedure may not . . . be interpreted as a waiver of the full due process to which he would be entitled," *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002); *see also Gupta*, 2007 WL 988692, at *4 (distinguishing *Narumanchi* from cases in which pre-deprivation process is required and not provided).

Thus, to determine whether Zeyer has waived all the process that she was due by failing to take advantage of the grievance process, the Court first must determine what process was required. "The due process clause requires a government employer to provide notice and opportunity for a hearing *before* terminating an employee with a protected property interest in his employment." *Faghri v. Univ. of Connecticut*, 621 F.3d 92, 99 (2d Cir. 2010) (quotation marks and citations omitted and emphasis added). "In such a hearing, the employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story," but "the requisite hearing is a minimal one, designed to serve as an initial check against mistaken decisions." *Id.*

In the case of an employee with access to grievance procedures under a CBA, generally "[t]here is no due process violation where . . . pre-deprivation notice is provided and the deprivation at issue can be fully remedied through the grievance procedures provided for in a collective bargaining agreement." *Adams v. Suozzi*, 517 F.3d 124, 128 (2d Cir. 2008) (dealing with employees whose wages were deferred, not whose employment was terminated). To meet the requirements of due process, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection . . . [and] afford a reasonable time for those interested to make their appearance." *Castanza v. Town of Brookhaven*, 700 F. Supp. 2d 277, 290 (E.D.N.Y. 2010); *see also United States v. Barrett*, 32 F. App'x 612, 614 (2d Cir. 2002) (due process requires "reasonable time to respond" after pre-deprivation notice).

The Court cannot determine, based on only the complaint and the few documents incorporated into it, whether Zeyer received adequate pre-deprivation notice and opportunity to respond. Zeyer alleges that she was notified of the change from her 0.45 FTE salaried position to

a requirement that she seek hourly overtime compensation "in or about June, 2010." Compl. ¶ 37. The appointment letter that discussed her return to 1.0 FTE status is dated June 25, 2010, but Zeyer may not have received it immediately. The complaint also does not provide the date on which the 1.0 FTE status went into effect, although the appointment letter seems to suggest July 1, 2010. *See also* ECF No. 47-2 at 7. In any event, it is entirely possible that Zeyer received the notice after her employment status had already been changed, or only a day or two beforehand. If the evidence shows as much, Zeyer may be able to make out a valid due process claim. *See Zamore v. Dyer*, 597 F. Supp. 923, 927 (D. Conn. 1984) (employee denied due process when "given termination notice less than one business day before she was scheduled to return to work . . . [and] never given a hearing"). Thus, consideration of Zeyer's due process claim is not wholly precluded by the fact that she failed to take advantage of the grievance procedures.

Finally, the defendants have moved to dismiss Count One due to the three-year statute of limitations for Section 1983 actions, under Conn. Gen. Stat. § 52-577. Zeyer counters that the statute of limitations should be equitably tolled because her delay in suing is due to the defendants' repeated assurances that a lawsuit would not be necessary during the informal discussions with the defendants beginning in 2010 and culminating with the 2012 MOU.

Zeyer has slightly mislabeled her claim as equitable tolling rather than equitable estoppel, but it is nonetheless sufficient to prevent the dismissal of Count One. "Unlike equitable tolling, which is invoked in cases where the plaintiff is ignorant of his cause of action because of the defendant's fraudulent concealment, equitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing his lawsuit." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 802 (2d Cir. 2014) (quotation marks omitted). "Equitable estoppel applies in cases where, for example, the

defendant lulls the plaintiff into not filing suit with assurances that she will settle the case." *Id.* "To invoke equitable estoppel, a plaintiff must show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment." *Id.* (quotation marks omitted).

Whether the defendants are equitably estopped from asserting the limitations defense will likely depend on the details of the communications between the defendants and Zeyer, which makes this determination inappropriate on a motion to dismiss. Zeyer has pleaded sufficient facts to raise a reasonable expectation that discovery will reveal evidence of equitable estoppel. The motion to dismiss Count One is therefore denied.

### B.    Counts Subject to Exhaustion Requirement

Several of Zeyer's claims are subject to a requirement that they be pursued according to the grievance procedures outlined in the CBA. Zeyer has not alleged that she exhausted the grievance procedures available to her under the CBA, nor has she alleged sufficient facts to show that her failure to exhaust those procedures should be excused. Because of this, the Court dismisses Counts Two, Five, Six, and Seven for lack of subject matter jurisdiction.[2]

### i.    Legal Standard for Exhaustion of a CBA's Grievance Procedures

"Section 301 [of the Labor Management Relations Act] governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar Inc. v. Williams*, 482 U.S. 386,

---

[2] Although the defendants have not challenged Counts Two and Six on this ground, the Court may raise *sua sponte* issues of subject matter jurisdiction at any point in the proceeding. "Issues relating to subject matter jurisdiction may be raised at any time, even on appeal, and even by the court *sua sponte*. If a court perceives at any stage of the proceedings that it lacks subject matter jurisdiction, then it must take proper notice of the defect by dismissing the action." *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) (internal citations omitted) (referencing *Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 740 (1976)). "Failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction." *Gerlach v. City of Danbury*, No. 3:09-CV-1950 JCH, 2012 WL 1032796, at *10 (D. Conn. Mar. 27, 2012).

394 (1987) (quotation marks omitted).[3] "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (citations omitted). "Before bringing such an action, the employee must exhaust grievance procedures provided by the relevant collective bargaining agreement." *Dougherty v. Am. Tel. & Tel. Co.*, 902 F.2d 201, 203 (2d Cir. 1990); *see also Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965).

But "not every state-law claim is preempted by Section 301, and rights and obligations that are truly independent of a collective bargaining agreement are enforceable." *Dougherty*, 902 F.2d at 203. Plaintiffs who are covered by a union contract may bring independent state-law claims for breach of separate "*individual* employment contracts," as long as the claims are not "substantially dependent on analysis of a collective-bargaining agreement"—that is, they do not "rely upon the collective agreement indirectly [or] address the relationship between the individual contracts and the collective agreement." *Caterpillar*, 482 U.S. at 394-95; *see also Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22, 26 (2d Cir. 1988) ("[W]e know of no case holding that a contract between an employer and an *individual* employee falls under section 301.").

An employer's promise to pay an employee for "additional work performed outside of the scope of the [collective bargaining] agreement" is not, on its own, substantially dependent on the collective bargaining agreement. *Heyer v. Morris Okun, Inc.*, No. 03 CIV. 2218 (NRB), 2003 WL 21991583, at *4 (S.D.N.Y. Aug. 20, 2003) (citing *Hernandez v. Conriv Realty Associates*, 116 F.3d 35, 39 (2d Cir. 1997)). And although a collective bargaining agreement's setting of

---

[3] Section 301 of the Labor Management Relations Act is codified at 29 U.S.C. § 185.

"rate[s] of pay and other economic benefits" may be useful in determining damages in a suit brought under state law, reference to those rates does not make the state law claim dependent on the collective bargaining agreement. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 n.12 (1988). Section 301 will, however, apply where the "collective bargaining agreement is . . . the source of the rights [the plaintiff] seeks to vindicate." *Avedisian v. Quinnipiac Univ.*, 387 F. App'x 59, 62 (2d Cir. 2010).

### ii.     Count Five (Breach of Contract)

Zeyer's breach of contract claim can be interpreted in two ways, as described below. The interpretation most favorable to Zeyer on the merits—indeed, the interpretation that is necessary for her to state a cognizable claim on the merits—relies upon a right created by a term of the CBA. As a result, the breach of contract claim is subject to the requirement under Section 301 of the Labor Management Relations Act that Zeyer exhaust the CBA's grievance procedures before filing this claim in court.

Zeyer alleges that the 2007 Agreement "constituted a contract between Zeyer and the defendants," Compl. ¶ 101, and that under the Agreement she "was to be paid as a 1.45 FTE and would not receive any overtime pay," *id.* ¶ 102. The defendants followed through on this agreement for three years. In appointment letters sent to Zeyer each June—each of which notified her of what her salary would be for the year—her salary was set at 1.45 times a full-time base salary for the 2007-08, 2008-09, and 2009-10 years. *Id.* ¶¶ 33-36. But in June 2010, the defendants told her that the 1.45 FTE position would not continue, and this was reflected in the 2010-11 appointment letter, which listed only a single full-time position and salary. *Id.* ¶¶ 37-38. Zeyer claims that in doing so the defendants  "reneged on" and breached the 2007 Agreement by "refus[ing] to pay [her] in accordance with that agreement, whereby she was a 1.45 FTE and the Town's 2% pension contribution was based on her annual salary as a 1.45 FTE." *Id.* ¶ 108.

12

The first interpretation of her claim is that the 2007 Agreement effectively promised her a new position governed by the CBA. Instead of occupying a single full-time position, she would occupy a full-time position plus another 0.45 FTE salaried position, also covered by the CBA. The CBA provides, "No employee shall be suspended without pay or discharged without just cause." CBA at 6. By appointing Zeyer to a new 0.45 FTE position, the 2007 Agreement effectively provided Zeyer with a contractual right *under Section 6.01 of the CBA* to continue in that position unless and until there was just cause to discharge her. Thus, if the defendants "discharged" her from that position in the absence of just cause, they breached the agreement.

Zeyer seems to adopt this interpretation. Although she does so expressly only in the context of her due process claim in Count One, *see supra* Section IV.A, it is a reasonable interpretation of the complaint as to the contract claim in Count Five as well. Zeyer alleges separately from her due process claim that "pursuant to the amended appointment letter . . . [her] position was as 1.0 bookkeeper at RHS and .45 bookkeeper at ERMS/SRMS." *Id.* ¶ 33. This interpretation does not fail as a matter of law, for the reasons already discussed *supra* Section IV.A, and it would permit Zeyer to state a cognizable claim for breach of contract. But it would be dependent on the terms of the CBA and subject to the exhaustion requirement.

The second interpretation is that the 2007 Agreement was a side deal under which Zeyer would provide extra labor in return for more money and pension contributions—*not* a new position protected by the discharge protections of the CBA. Although this interpretation might make Zeyer's claim independent of the CBA, it would thereby eliminate any cognizable cause of action because her employment relationship under the 2007 Agreement would be at will and terminable at any time. *See Encarnacion v. Isabella Geriatric Ctr., Inc.*, No. 1:11-CV-3757 GHW, 2014 WL 7008946, at *14 (S.D.N.Y. Dec. 12, 2014) (claim for breach of employment

contract either fails because of the presumption of at-will employment, or relies on the terms of a collective bargaining agreement to rebut the presumption and is therefore governed by Section 301 of the Labor Management Relations Act).

"In Connecticut, an employer and employee have an at-will employment relationship in the absence of a contract to the contrary. Employment at will grants both parties the right to terminate the relationship for any reason, or no reason, at any time without fear of legal liability." *Thibodeau v. Design Grp. One Architects, LLC*, 802 A.2d 731, 735 (Conn. 2002). "[T]he presumption of at-will employment can be overcome *either* by an express provision in the employment contract that employment can be terminated only for cause *or* by an express provision that the employment contract is for a definite term . . . ." *Cruz v. Visual Perceptions, LLC*, 84 A.3d 828, 836 n.12 (Conn. 2014).

Zeyer has not alleged the existence of any express provision of a contract with the defendants, other than Section 6.01 of the CBA, that would have limited the defendants' ability to terminate and renegotiate the terms of the 2007 Agreement at will. Thus, in interpreting Count Five in the manner necessary for Zeyer to state a cognizable claim, the Court finds that Zeyer's claim for breach of contract is subject to the requirement that she exhaust the grievance procedures contained in the CBA.

### iii.    Count Seven (Covenant of Good Faith and Fair Dealing)

Count Seven, which alleges a breach of the covenant of good faith and fair dealing implicit in the 2007 Agreement, is subject to the exhaustion requirement under the same analysis as Count Five.

"Where employment is clearly terminable at will, a party cannot ordinarily be deemed to lack good faith in exercising this contractual right" unless "the reason for his discharge involves

impropriety . . . derived from some important violation of public policy." *Magnan v. Anaconda Indus., Inc.*, 479 A.2d 781, 789 (Conn. 1984) (quotation marks omitted). The public policy exception is "narrow," and "allegations of the complaint [must be] sufficient to support a claim that the plaintiff's discharge was in violation of an important and clearly articulated public policy." *Iosa v. Gentiva Health Servs., Inc.*, 299 F. Supp. 2d 29, 35 (D. Conn. 2004).

The complaint contains no such allegations, and therefore the claim under the covenant of good faith and fair dealing depends on establishing an employment relationship that was not terminable at will. On the basis of Zeyer's allegations, that is only possible if the complaint is interpreted to accuse the defendants of having violated the discharge protections of the CBA. Count Seven is therefore necessarily subject to the exhaustion requirement.

### iv.   Count Six (Equitable Estoppel)

Count Six alleges equitable estoppel as a cause of action; the defendants are correct that Connecticut does not recognize equitable estoppel as a cause of action. *See, e.g.*, *Covey v. Comen*, 698 A.2d 343, 345 n.5 (Conn. App. 1997) ("[E]stoppel is generally not considered a cause of action, but rather is pleaded as a special defense."); *Dickau v. Town of Glastonbury*, 242 A.2d 777, 780 (Conn. 1968) ("[E]quitable estoppel is available only for protection and cannot be used as a weapon of assault."). But even if the Court interpreted Count Six liberally as a claim for *promissory* estoppel, it would fail for the same reason that Counts Five and Seven failed— namely, that Zeyer has failed to exhaust the CBA's grievance procedures before pursuing an action in court.

Zeyer alleges that "the defendants misled [her] into believing that they intended to honor their obligations under the 2007 proposal." Compl. ¶ 113. Although Zeyer does not state how the defendants broke the promise, the most reasonable reading of the complaint is that she is

incorporating her earlier claim that the defendants broke the promise by unilaterally deciding in June 2010 to end the 1.45 FTE salary arrangement.

"Promissory estoppel is asserted when there is an absence of consideration to support a contract." *Glazer v. Dress Barn, Inc.*, 873 A.2d 929, 963 (Conn. 2005). A claim of promissory estoppel requires "the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance." *Torringford Farms Ass'n, Inc. v. City of Torrington*, 816 A.2d 736, 740 (Conn. App. 2003).

The only alleged source of a clear and definite promise about the duration of the 1.45 FTE salary arrangement is Section 6.01 of the CBA. Even assuming *arguendo* that the appointment letters constituted binding promises of employment for a fixed term and that they were independent of the CBA, any binding promises contained in the prior letters were, by their own terms, limited to a single year, and the defendants waited until the next annual renewal cycle, in June 2010, to send an appointment letter with the reduced salary. Thus, in interpreting Count Six in the manner necessary for Zeyer to state a cognizable claim, the Court finds that Zeyer's claim for estoppel is subject to the requirement that she exhaust the grievance procedures contained in the CBA.

### v.    Count Two (Unpaid Wages)

Count Two, a claim under Conn. Gen. Stat. § 31-72 for the payment of unpaid wages, is also subject to the exhaustion requirement. Section 31-72 provides: "When any employer fails to pay an employee wages . . .  such employee . . . may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court." Conn. Gen. Stat. § 31-72. The statute exists "to protect the sanctity of the wages earned by an employee pursuant to the agreement she or he has made with her or his employer." *Mytych*

*v. May Dep't Stores Co.*, 793 A.2d 1068, 1073 (Conn. 2002). It "merely provides an enhanced remedy for the collection of wages. It does not embody substantive standards to determine the amount of wages that are payable but provides penalties in order to deter employers from deferring wage payments once they have accrued. Section 31-72 is, therefore, a remedial statute rather than one creating independent substantive rights." *Id.* (quotation marks omitted). "Thus, it follows that a plaintiff subject to a collective bargaining agreement must exhaust all administrative remedies provided by contract prior to bringing a claim pursuant to CGS § 31-72." *Wu v. Chang's Garden of Storrs, LLC*, No. 3:08-CV-746 WWE, 2009 WL 3769109, at *4 (D. Conn. Nov. 10, 2009).

Zeyer's claim under Conn. Gen. Stat. § 31-72, no less than her claim for breach of contract, relies upon the discharge protections of the CBA to state a cognizable claim for unpaid wages, because Section 31-72 creates no substantive rights beyond those provided by her contractual agreements with the defendants. Count Two therefore is subject to the exhaustion requirement.

### vi.       Whether the Exhaustion Requirement Is Excused

Zeyer has not alleged that she exhausted the grievance procedures provided by the CBA. Instead, she relies upon the argument that the exhaustion requirement should be excused because following the CBA's grievance procedures would have been "futile." After considering the "futility" exception—as well as the two other related exceptions to the exhaustion requirement—the Court finds that Zeyer's allegations do not support any recognized excuse. Given the absence of an excuse for Zeyer's failure to exhaust the CBA's grievance procedures, the Court must dismiss all the claims that are subject to the exhaustion requirement (Counts Two, Five, Six, and Seven).

The CBA at issue in this case provides for a multi-stage grievance process. The first stage is informal. Within ten days of the "incident giving rise to the Grievance"—here, Zeyer's receiving notice in approximately June 2010 that her salary would be reduced—a grievant may approach a school board administrator to discuss an informal resolution. CBA at 13. The grievant may then spend up to five days in informal negotiations. *Id.* If an agreement has not been reached at that point and the grievant wishes to take the grievance further, she must notify the union within fifteen days after the "incident giving rise to the Grievance." *Id.*

Then the formal grievance process begins, the procedures for which "shall be followed exclusively." *Id.* at 14. The union, having received the grievant's notice, *may* file a formal written grievance with the grievant's supervisor and the Personnel Director, and must do so within three days of having received the grievant's notice. *Id.* The supervisor then sends a response, and if the grievant is dissatisfied, she (not the union) may pursue an appeal to the Personnel Director, followed by subsequent appeals to the Superintendent and the Board of Education. *Id.* at 14-15. The Board's decision is provided to the union, and the union (not the grievant) then decides whether to pursue the final process of arbitration. *Id.* at 15.

Zeyer alleges that after she was informed in approximately June 2010 that her 1.45 FTE position would no longer exist, she began informal negotiations with the defendants, without involving the union. Compl. ¶¶ 41-46. She does not allege that she ever notified the union of the informal discussions or of her desire to pursue a formal grievance. Although she would have been willing to involve the union or file a formal grievance, the defendants never told her that she would need to, and she believed that the defendants were engaging with her directly because they felt that a more formal process was unnecessary. *Id.* At some point in 2011, the defendants proposed the idea of the MOU, and in approximately September 2011, they advised Zeyer that

they would seek the union's approval of the MOU. *Id.* ¶¶ 47-48, 57. In approximately March 2012, the union told Zeyer that it would get involved and discuss the matter with the defendants. *Id.* ¶ 50. A union representative met with the defendants' attorney, and the defendants began drafting the MOU. *Id.*

At some point in June or July of 2012, the defendants finalized the MOU—which provided that Zeyer would be appointed to a twelve-month salaried position paying $78,958— and sent it to Zeyer. *Id.* ¶¶ 53-55. The defendants characterized the MOU as "an enormous concession" on their part. *Id.* ¶ 54. The union met on July 31, 2012, and voted to reject the MOU. *Id.* ¶ 58. Zeyer believed that, because the defendants already had put forward such an "enormous concession," which failed, the defendants would be unlikely to continue negotiating. *Id.* ¶ 60. She does not allege that she pursued the matter any further between the union's vote and the filing of this lawsuit.

A plaintiff may file suit "despite his failure to exhaust fully his contractual remedies: (1) when the employer repudiates the private grievance machinery; (2) if the union breaches its duty of fair representation; or (3) where the administrative remedies would be wholly futile." *Schum v. S. Buffalo Ry. Co.*, 496 F.2d 328, 330 (2d Cir. 1974); *accord Vera v. Saks & Co.*, 208 F. App'x 66, 68 (2d Cir. 2006).

Zeyer has not invoked the repudiation exception by name, either in her complaint or in her brief. But even if Zeyer's generalized invocation of "futility," read together with her allegation that she relied on the defendants' conduct when deciding not to pursue a formal grievance, were enough to raise the issue, the argument would fail. An "employee should not be limited to the exclusive remedial procedures established by the contract . . . when the conduct of the employer amounts to a repudiation of those contractual procedures." *Vaca v. Sipes*, 386 U.S.

171, 185 (1967). But "the standard for establishing repudiation is very high." *Fraternal Order of Police, Nat. Labor Council, USPS No. 2 v. U.S. Postal Serv.*, 988 F. Supp. 701, 711 (S.D.N.Y. 1997); *see also Allocco v. Dow Jones & Co.*, No. 02 CIV. 1029 (LMM), 2002 WL 1402084, at *3 (S.D.N.Y. June 27, 2002) (rejecting repudiation excuse where plaintiff "fail[ed] to allege that defendants *refused* to go forward with the grievance process" and instead "allege[d] that the defendants did not *want* to pursue the process") (emphasis added).

Although Zeyer alleges that she failed to file a formal grievance because the defendants were negotiating an informal agreement directly with her, the allegation does not amount to a repudiation of the formal grievance process by the defendants. *Larkin v. Gen. Motors Corp.*, No. 87-CV-1006S, 1992 WL 170888, at *4 (W.D.N.Y. July 9, 1992) ("[I]nducing an employee to settle a grievance is not equivalent to a repudiation of the contractual procedures."). The CBA, while permitting and even encouraging informal resolution of grievances, places the onus on the grievant to timely notify the union that the informal discussions have not yielded a resolution. CBA at 13 ("If the Grievance is not resolved within five (5) days of said discussion, the Grievant shall notify the Union no later than fifteen (15) days after the incident giving rise to the Grievance.").

There is no allegation that the defendants prevented Zeyer from initiating the formal grievance process or indicated that they would refuse to participate in the formal grievance process. The CBA provides a grievant only fifteen days to pursue an informal resolution before filing a formal grievance, although it does not prohibit continuing informal discussions on a parallel track while the formal grievance process is ongoing. The provision is clear, and Zeyer— not the defendants—chose to disregard its requirements, perhaps in the belief that the informal discussions would bear fruit or that the initiation of a formal grievance would make settlement

less likely. In any event, there are no facts alleged suggesting that the defendants repudiated the grievance procedures.

Next, even if Zeyer's attempt to excuse her non-exhaustion could be interpreted as an invocation of the exception for when a union breaches its duty of fair representation, it would fail. Failure to exhaust may be excused where "the union has sole power under the contract to invoke the higher stages of the grievance procedure, and . . . the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance"—i.e., the union's breach of its "duty of fair representation to the employee." *Vaca*, 386 U.S. at 185. "To prove that a union has breached its duty of fair representation, the challenging members must establish two elements. First, they must prove that the union's actions or inactions are either arbitrary, discriminatory, or in bad faith. Second, [they] must demonstrate a causal connection between the union's wrongful conduct and their injuries." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (quotation marks and citations omitted).

First, despite being permitted to amend her complaint after the defendants raised the exhaustion issue in their first motion to dismiss, *see* ECF Nos. 32, 37, Zeyer has not alleged that the union breached its duty of fair representation or alleged any facts that would support a finding of arbitrary, bad-faith, or discriminatory conduct. *Vera v. Saks & Co.*, 424 F. Supp. 2d 694, 705 (S.D.N.Y.) ("In order to be excused from the exhaustion requirement based on a union's breach of the duty of fair representation, the employee must adequately plead and eventually prove that breach, even if only the employer is sued.") (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151 (1983)). "A union's failure or refusal to pursue a grievance on its own does not constitute a breach of the duty of fair representation . . . ." *Id.* at 706.

Second, Zeyer concedes that she never notified the union of her desire to pursue a formal grievance, which makes her own inaction—not the union's inaction—the cause of her predicament. Section 13.05 of the CBA gives the union the sole power to file the formal grievance in the first instance (although Section 13.07(d) suggests that the grievant may initiate the formal grievance) and the sole power to pursue arbitration, but the union only becomes involved in the first place if the grievant notifies the union of the grievance in a timely fashion. Zeyer spent months in informal negotiations without the union, far beyond the fifteen-day window in which she was supposed to notify the union, and in fact, she has not alleged that she ever affirmatively notified the union or pressed it to file a grievance. According to the second amended complaint, it was the defendants who first raised the need to involve the union, and the union itself later informed Zeyer of this, but at no point did she see fit to initiate the grievance procedure, even after she was represented by counsel. Compl. ¶¶ 48-51.

Finally, Zeyer's failure to exhaust is also not excused by the exception for "futility."  The exception applies where "a formal effort to pursue contractual or administrative remedies would be absolutely futile." *Glover v. St. Louis-San Francisco Ry. Co.*, 393 U.S. 324, 331 (1969). The exception requires "a showing of exceptional conditions." *Bovers v. Flying Tiger Line Inc.*, 979 F.2d 291, 299 (2d Cir. 1992). "Subsequent to *Glover*, the futility exception has been largely limited to situations where the operation of bias or prejudice renders any attempts to resort to contractual remedies useless." *Vera v. Saks & Co.*, 424 F. Supp. 2d 694, 707 (S.D.N.Y.); *see also Drywall Tapers & Pointers of Greater New York, Local 1974 of I.B.P.A.T., AFL-CIO v. Local 530 of Operative Plasterers & Cement Masons Int'l Ass'n*, 954 F.2d 69, 77 (2d Cir. 1992) (applying the futility exception where "[t]he Trades Council had explicitly stated that it would 'deny any further hearings' concerning the dispute"); *Parham v. Carrier Corp.*, 9 F.3d 383, 390-

91 (5th Cir. 1993) (reading the *Glover* exception narrowly in light of *Glover*'s exceptional facts, involving racial discrimination and collusion between the union and the employer).

Zeyer has not alleged that either the union or the defendants were so biased or prejudiced against her that an attempt to employ the CBA's grievance procedures would have been "absolutely futile." *Glover*, 393 U.S. at 331. The only basis for her suspicion that the process would be futile is that the defendants had proposed, and the union rejected, the MOU. This basis is irrelevant, insofar as the MOU was rejected on July 31, 2012, approximately two years after the relevant period of time, in the summer of 2010, when Zeyer was obligated to notify the union of the grievance and chose not to. Moreover, even setting aside that fundamental problem of timing, the mere fact that the union rejected a *particular* informal resolution and the specific terms therein does not mean that the union would have refused to pursue Zeyer's grievance *at all*.

Zeyer does not allege that she exhausted the grievance procedures set forth under the CBA, nor does she allege facts sufficient to excuse the exhaustion requirement. Thus, all of the claims that are subject to the exhaustion requirement (Counts Two, Five, Six, and Seven) must be dismissed for failure to satisfy a prerequisite to this Court's jurisdiction.

   **C.     Remaining Claims (Counts Three and Four)**

      **i.     Count Four (Overtime Pay under the Fair Labor Standards Act)**

Count Four is a claim for unpaid overtime wages for hours worked in excess of forty hours per week, as required by the FLSA, 29 U.S.C. § 207. The CBA's grievance process applies only to "an alleged violation, misinterpretation or misapplication of an explicit provision of this Agreement." CBA at 13. Count Four seeks to vindicate an independent statutory right and therefore is not subject to the exhaustion requirement. *Scott v. City of New York*, 592 F. Supp. 2d

386, 400 (S.D.N.Y. 2008) ("[C]laims based on violations of FLSA itself—and not on construction of the CBA—are not subject to exhaustion requirements . . . .") (citing *Tran v. Tran*, 54 F.3d 115 (2d Cir. 1995)).

The defendants have moved to dismiss Count Four as to any overtime payment obligations that accrued more than three years prior to the filing of this lawsuit on September 13, 2013, due to the statute of limitations for FLSA actions, 29 U.S.C. § 255(a). Zeyer counters that the statute of limitations should be equitably tolled because her delay in suing to collect her unpaid overtime is due to the defendants' repeated assurances that a lawsuit would not be necessary—first, in 2007 when the defendants assured her while the 2007 Agreement was being crafted, and again when she engaged in informal discussions with the defendants beginning in 2010 and culminating with the 2012 MOU. For the reasons already discussed in relation to Count One, the equitable estoppel issue prevents dismissal. The motion to dismiss Count Four is denied.

### ii.     Count Three (Overtime Pay under Connecticut Law)

Count Three is a claim for unpaid overtime wages for hours worked in excess of forty hours per week, as required by the CMWA, Conn. Gen. Stat. § 31-76c. The same rationale for excluding Zeyer's FLSA claim from the exhaustion requirement applies to her CMWA claim in Count Three. *See generally Dehua Lin v. Brennan*, No. 3:07-CV-1658 CFD, 2011 WL 5570779, at *4 (D. Conn. Nov. 15, 2011) ("The Connecticut wage statute is very similar to the FLSA except that it does not require that the employees or the enterprise be engaged in interstate commerce."); *Hendricks v. J.P. Morgan Chase Bank, N.A.*, 677 F. Supp. 2d 544, 560 (D. Conn. 2009) ("[T]he Connecticut Supreme Court has indicated that federal precedent can be used to

interpret Connecticut laws that are analogous to provisions contained in the FLSA.") (citing *Roto–Rooter Services Co. v. Dep't of Labor,* 593 A.2d 1386 n.8 (Conn.1991)).

The parties have raised the same arguments about Count Three as they did about Count Four—namely, a statute of limitations defense and the equitable estoppel of that defense. For the reasons already discussed in relation to Count One, the equitable estoppel issue prevents dismissal. The motion to dismiss Count Three is denied.

## V.     Conclusion

For the reasons above, the defendants' Motion to Dismiss (ECF No. 50) is GRANTED IN PART AND DENIED IN PART. Counts Two, Five, Six, and Seven are dismissed for lack of subject matter jurisdiction. The case proceeds on Count One against defendant Low for the alleged failure to provide due process, and Counts Three and Four against defendants Board of Education and Ridgefield Public Schools for the alleged failure to pay overtime wages in accordance with state and federal law.

**SO ORDERED** this 18th day of March, 2015, at Hartford, Connecticut.

_____/s/_____
Michael P. Shea
United States District Judge